**STATE of Missouri, Respondent,**

v.

**Charles Glenn HUFF, Appellant.**

No. 54828.

Supreme Court of Missouri, Division No. 1.

June 8, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Michael L. Boicourt, Asst. Attys. Gen., Jefferson City, for respondent.

Thomas H. Moore, St. Louis, for appellant.

HIGGINS, Commissioner.

Charles Glenn Huff, with two prior convictions of burglary, second degree, and stealing, was further charged with burglary, second degree. A jury convicted him and the court assessed his punishment at seven years' imprisonment. §§ 556.280, 560.070, 560.095, V.A.M.S.

Appellant contends that the state's evidence was entirely circumstantial and was "not inconsistent and irreconcilable with defendant's innocence * * * as to exclude every reasonable hypothesis of his innocence," in that the evidence showed only his presence at the scene of a burglary.

The evidence, so challenged by appellant, shows that on January 22, 1969, Luther Hall, doing business as Hall's Auto Parts, at 4800 Easton Avenue, St. Louis, Missouri, closed, locked, and left his premises between 10:00 and 10:30 p. m. He later was notified by the police that there had been a burglary of his premises. He returned to his premises between 2:00 and 2:30 a. m., January 23, 1969, and found that the front door had been forced open, the cigarette machine had been pried open, debris was on the floor, and a small cash box was missing from the machine. Mr. Hall was acquainted with Charles Glenn Huff who lived across the street from his business.

Police Officers Joseph Robinson and Bruce Liebusch were patrolling the vicinity of 4800 Easton Avenue in uniform and marked car at approximately 2:00 a. m., January 23, 1969. They heard a burglar alarm sounding at Hall's Auto Parts and Officer Robinson observed an unidentified man standing at the front door which was later found to have been "split open." The man fled the scene on foot; Robinson gave chase but was unable to catch him. Officer Liebusch also observed the unidentified man to look at the policemen and run. He also alighted from the police car and observed Charles Glenn Huff "lower himself" beside an automobile parked near the front door. "He was kneeling directly beside this automobile." Officer Liebusch found a screwdriver lying "next to the defendant when he was arrested," and he also gathered some wood and paint chips from the floor inside the broken door.

Cordell Brown, criminologist, examined the paint fragments and found them to match exactly with paint fragments taken from the trousers worn by defendant when arrested.

This evidence, and particularly the identification of defendant at the scene of the burglary, together with paint fragments from his trousers matching paint fragments taken from within the premises, and his attempted concealment, demonstrates more than mere presence of the defendant at the scene of the offense, as in State v. Irby, Mo., 423 S.W.2d 800, State v. Castaldi, Mo., 386 S.W.2d 392, State v. Watson, Mo., 425 S.W.2d 123, and supports the jury's verdict. State v. Allen, Mo., 420 S. W.2d 330; State v. Foster, Mo., 438 S.W. 2d 176.

Appellant complains that he was erroneously limited in cross-examination of the criminologist in that he was not permitted to ask whether the screwdriver in evidence, if used to pry open a door or other object, would pick up paint fragments. This incident occurred in the following context:

"Q  *  *  *  If a fellow used a screwdriver, say, to open a door—

"MR. NOLAN: (Interrupting) I will object to this as going beyond the qualifications of Mr. Brown; he is not a burglar, he is a chemist.

"MR. MOORE: He is an expert, your Honor.

"THE COURT: I don't know what the question is going to be. Let him propound the question and then make your objection, and the Court will rule on it.

"Q (By Mr. Moore) If a person used a screwdriver to get into the door of a building, and in a vending machine, or something of that kind, wouldn't some of the fragments necessarily get on that screwdriver?

"MR. NOLAN: At this time, your Honor, we will object to Mr. Moore's question: Mr. Brown's qualification does not run to burglarizing machines and buildings. He is only qualified to analyze evidence and testify to what he sees.

"THE COURT: Sustained.

"(Thereupon, the following occurred out of the hearing of the jury):

"MR. MOORE: I would like to make an offer of proof. This man is an expert and can certainly testify to what criminals can do, or what they can't do, and can testify as to what kind of evidence he can examine, and I am just asking that type of question of him.

"MR. NOLAN: Your Honor, I object to the form of that question as it would not—as to whether or not this would nec-essarily leave something on the screwdriver; I don't know how anyone can know that, or how he can know that as an expert. He can't tell you what is on a screwdriver.

"THE COURT: Sustained.

"(Thereupon, the following occurred within the hearing of the jury):

"Q (By Mr. Moore) Mr. Brown, could you examine a screwdriver and see if there were fragments on it? A Yes, sir, I could. Q Did they give you a screwdriver to examine in this case? A I don't recall whether they did, or not."

Appellant recognizes that the extent of cross-examination of an expert rests within the discretion of the court, and since defendant was permitted to establish that the screwdriver was never submitted to the expert to determine whether paint fragments from the Hall premises had adhered to it, the court did not abuse its discretion in refusing the more speculative question. Parker v. Ford Motor Co., 296 S.W.2d 35, 40[8]. See also 32 C.J.S. Evidence § 560(1); 23 C.J.S. Criminal Law § 888; Bass v. United States, 8 Cir., 326 F.2d 884.

Appellant charges the court erred in permitting Officers Robinson and Liebusch to testify in rebuttal on the grounds their testimony had already been given in the state's case in chief, Crouch v. Commonwealth, 238 Ky. 5, 36 S.W.2d 653, Henderson v. State, Okl., 389 P.2d 363, 23 C.J.S. Criminal Law § 1051, and that it was "designed" to impeach witness Denise Huff on a collateral matter, State v. Hamilton, Mo., 310 S.W.2d 906. This contention is furthered by charging error in refusing testimony of witness Denise Huff in surrebuttal of the officers' testimony on the theory that having once permitted the allegedly erroneous rebuttal from the officers, the court should have permitted a full opportunity to explain the rebuttal evidence, State v. Lewis, Mo., 137 S.W.2d 465, 467, State v. Washington, Mo., 383 S.

W.2d 518, State v. Sawyer, Mo., 365 S.W.
2d 487.

Appellant's authorities recognize that control of rebuttal testimony also rests within the discretion of the trial court, e.g., "While the admission in rebuttal of evidence proper in chief may be irregular and not the better practice, whether such evidence may be admitted on rebuttal rests largely in the sound discretion of the court; and the court may even permit a witness to reiterate his testimony on direct examination." 23 C.J.S. Criminal Law § 1051, supra. The same text at 23 C.J.S. Criminal Law § 1053, states that "The prosecution is entitled to rebut accused's evidence as to an alibi; and accused may, on surrebuttal, rebut new matter on the issue introduced by the state," thereby recognizing that alibi is not within the proscription of rebuttal testimony on collateral matters, and that control of surrebuttal also lies within the discretion of the trial court.

The context of the testimony in question demonstrates that the court did not abuse the discretion accorded to it by these authorities. Officers Robinson and Liebusch testified on direct examination that their observations and arrest of Charles Glenn Huff occurred at "approximately" or "about" 2:00 a.m., January 23, 1969. In defendant's case in chief defendant's wife testified to establish an alibi defense to the offense stated to have occurred around 2:00 a.m., January 23, 1969, and testified that her husband left their home "between 10:00 and 10:15" p.m., January 22, 1969, and she "looked out and * * * saw the police put him in the car" about five minutes later. She also testified that the burglar alarm at Hall's sounded "about a quarter to ten," and that the arrest took place prior to 11:00 p.m., January 22, 1969. Time of arrest, not previously a matter of exactitude, thus became an issue and the court properly permitted the officers to reiterate their testimony on time of the events, i.e., around 2:00 a.m.,

January 23, 1969, and to give additional details about their work shift which tended to support their testimony on time. The offer of witness Denise Huff in surrebuttal was "to ask her what time it was," a matter which was covered in detail on both her direct and cross-examinations, and the reiteration was properly disallowed in the exercise of the court's discretion. See State v. Niehoff, Mo., 395 S.W.2d 174, 182[9, 10].

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.