STATE of Missouri, Respondent,

v.

Paul L. STEVENS, Appellant.

No. 57692.

Supreme Court of Missouri,
Division No. 2.

Dec. 10, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Stephen P. Seigel, Springfield, for appellant.

HOUSER, Commissioner.

On October 26, 1971 Paul L. Stevens filed a notice of appeal from a judgment finding him guilty of burglary in the second degree and stealing, after jury verdict, and sentencing him to 2 years on each charge, the sentences to run consecutively.

Appellant contends that the State failed to meet its burden of proving beyond a reasonable doubt that he was guilty of the crime charged; produced no evidence that appellant intentionally aided, abetted, assisted or encouraged others to commit the alleged burglary and stealing; that the only evidence implicating appellant is that he was found in a field near the burglarized store; that mere presence of a person at the time and place of the commission of an offense is not alone sufficient to render him liable for its commission. The State's evidence showed the following: Dennis Price, employee at Stenger Auto Supply, made a routine check on closing at 5 p. m. on July 11, 1971. He locked all doors, put the money up, checked the light beams on the burglar alarm, which was working, and turned on the alarm. The alarm sounded at police headquarters shortly after 10:00 p. m. A number of Springfield police officers responded. Officer Sanderson found Max Highfill crawling out of a 17 x 24 inch hole broken out of the concrete block back wall of the store. He heard another person running west and shouted to the latter to halt, but the fleeing person failed to stop. Sanderson pursued him through some thick brush, keeping him in view most of the time. Occasionally when the subject was out of sight the officer could see the brush "rustling" where he had run. Finally the officer discovered and arrested appellant, who when found was lying down in the brush, approximately sixty feet from

Stenger Auto Supply. Sanderson noticed that appellant's clothing was covered with tickers from the brush and was mussed and ruffled. Michael Buddy Perryman, observed running west approximately 25–50 feet from the building, was arrested by Officer Looney. Officer Wheeler, using a trained police dog, located James Stevens, who was found hiding in a field west of the building. James testified that he and Highfill planned and executed the crimes and that appellant had nothing to do with either planning or execution; that appellant just happened to come upon the scene. Numerous cartons of STP motor oil additive and numerous automobile batteries had been moved from their regular resting places in the store, preparatory to removal from the building. When Price left work the dollies were not loaded but when the officers arrived one of the dollies had batteries on it. Other batteries were scattered about the hole in the wall together with battery chargers in boxes. Two cases of STP were found outside the building, 30–40 feet from the hole in the wall. Several tools, not the property of the store, were found. The subjects arrested at or near the scene were taken to police headquarters where appellant's clothing and shoes were taken from him and locked in the property room. Subsequent comparative analysis laboratory tests of concrete block scrapings taken from the vicinity of the hole in the wall, dust removed from the tools, and dust fragments taken from appellant's clothes showed that they were of the same type. A crime laboratory technician testified that the composition of the block and that of the material from the tools and clothing were the same types and in the same proportional amounts, indicating that they came from a similar source.

■ The foregoing evidence, which places appellant at the scene of the crime, fleeing and attempting to conceal himself, wearing clothes containing particles which connect him with the material surrounding the hole by which the burglars effected an entry into the building, is sufficient evi-

dence to sustain a conviction of burglary and stealing, and to show more than mere innocent or accidental presence at the scene. State v. Huff, 454 S.W.2d 920, 921[1] (Mo. 1970); State v. Meeks, 458 S.W.2d 245 (Mo.1970); State v. Allen, 420 S.W.2d 330 (Mo.1967).

■ Appellant complains that on several occasions during the trial the State was permitted over objection to refer to one Michael Buddy Perryman as one of the participants. Appellant claims that he was thereby prejudiced because Perryman had a reputation in Springfield and Greene County as a person with an extensive arrest and criminal record, and that the State was attempting to prove appellant's guilt by association with Perryman. This complaint is without merit. The record does not bear out appellant's basic premise that Perryman had a local reputation as a person with an extensive arrest and criminal record. Appellant's counsel so stated at the trial but he was not under oath and there is no evidence in this record that this is a fact. Nor is there a showing that any juror had knowledge of Perryman's reputation. Since the case against appellant rested upon proof of a crime committed by two or more persons acting jointly the State had a right to show that several persons acted together in the commission of the offense and to show who they were and what each one did, i. e., to show all of the attendant circumstances. From the whole evidence the jury could determine whether the others were appellant's accomplices and whether they were acting together with a common intent. State v. Brown, 476 S.W.2d 519, 524 (Mo.1972).

■ Complaint is made that there was no evidence to support the giving of the instructions to the jury. Instructions Nos. 2 and 3 were drafted in conventional form, charging appellant with breaking and entering, and stealing. By No. 5 the jurors were instructed that all persons are equally guilty who act together with a common intent in the commission of a crime, and a crime so committed by two or more persons acting jointly is the act of all and of each one so acting. Appellant argues that there is no evidence that appellant acted together with anyone else in the commission of these crimes; that the only evidence linking appellant with the persons who admitted the crime is that appellant "was found standing in a field" near the store, and that mere presence of a person at the time and place of the commission of an offense is not alone sufficient to render him criminally liable; that James Stevens testified for appellant that James Stevens and Max Highfill committed the crime and that appellant in no way participated in the planning or commission of the crime, and that the State did not rebut or impeach James' testimony. In fact appellant was found lying down, attempting to conceal himself in the underbrush, and was not found "standing up in a field." As previously pointed out, there was more than mere presence at the scene of a crime; there was flight, attempted concealment, and evidence that particles of dust on appellant's clothing came from the entry and exit hole broken into the wall of the building by the burglars. In toto the evidence was sufficient to support the given instructions.

Finally, appellant claims error in the admission of the expert testimony with regard to particles found in appellant's clothing and shoes because (1) the State failed to prove that the condition of the clothes when taken from appellant was the same as when tested and (2) Mr. Smith was not qualified to testify as an expert. There was no error in either respect.

■ (1) Appellant's shirt and trousers were taken off him at headquarters. There appeared to be weed seeds and dirt on the clothing, which was placed in a plastic container, marked with tags and placed in the evidence room under lock and key, on the evening of July 11. Donald Smith, crime laboratory director for the Springfield Police Department, received the clothes from the evidence storage room

at 8 o'clock on the morning of July 12. On that morning Smith went to the scene of the crimes. There he took concrete block scrapings from the vicinity of the hole in the rear wall of the store, which he placed in envelopes, and some plant material found 20–25 feet west of the building. Smith kept this material under lock and key. On the afternoon of July 13 Smith ran laboratory tests on the clothes. Smith testified that these clothes would not have changed their condition from the time he obtained them on the morning of the 12th, but an objection to this testimony on the ground that no proper foundation had been laid was sustained. The State then laid the foundation by showing that the clothing remained in the evidence storage room intact under lock and key during the interval. Under questioning by the court Smith stated that there was not to his knowledge any difference he could detect in the condition of the various items between the first time he saw them at 8 a. m. on July 12th and the time he examined them on the afternoon of July 13th. This was sufficient proof of the sameness of the condition of the clothing; reasonable assurance of identity and same condition within the rules laid down in State v. Krout, 282 S.W. 2d 529 (Mo.1955); State v. Baines, 394 S. W.2d 312 (Mo.1965), cert. den. 384 U.S. 992, 86 S.Ct. 1900, 16 L.Ed.2d 1008, and State v. McCrary, 478 S.W.2d 349 (Mo. 1972).

■ (2) Donald Smith, Crime Laboratory Director for the Springfield Police Department, was qualified to testify as an expert. He received a B.S. degree in Cereal Chemistry in 1956 from Kansas State University; B.S. and Master's degrees in business administration from Drury College. For three years he worked in the area of dehydrated food products, involving chemistry work, for Henningson, Inc., Central Laboratories. For nine years he was with Kraft Foods Company, six years as Laboratory Supervisor, three years as Quality Control Manager. His present work is in the field of drug analysis, blood analysis, physical examination, and comparison analysis in the field of crime. He testified that Exhibit 18 was material obtained by scratching the broken edge of a concrete block tile taken from the area of the auto supply store; that Exhibit 19 was material brushed from the soles and welting of appellant's shoes; that Exhibit 20 was white material from the end of a ballpeen hammer; that Exhibit 21 was fragments brushed off another ballpeen hammer; that Exhibit 22 was the residue of particles which Smith shook from appellant's clothing onto a clean plate glass shortly before noon on the 13th of July; that Exhibit 25 was white substance from the back of the tip of a Mason bit, and that another exhibit was white substance from a drill bit. Smith examined these various exhibits physically by using microscopes, determined the various crystalline structures, measured the refracting index, measured the molecular configuration by the dispersion staining technique, and made a micro-crystalline test and various chemical analyses. Not having previous experience with concrete blocks in this context he studied textbooks, conferred with the expert for Portland Cement and contacted a manufacturer of concrete blocks in the area. He found that the particles from appellant's clothing and those from the ballpeen hammers were of the same density and same type of crystalline structure; that the crystals and proportions were very similar, in fact indistinguishable; that the dust fragments from the clothes "are the same as those [he] took from the hammer and that rock that was taken from Stenger's, * * *." He also found the beggar lice from appellant's clothes and that taken from the area in back of the store identical and indistinguishable in conformity, size and color. He concluded that the composition of the concrete block and the composition of the material from the tools and clothing are of the same proportional amounts and same types, which would indicate that they are all related and come from a similar source. We conclude that Mr. Smith was properly qualified to testify

as an expert in this case. State v. Williams, 382 S.W.2d 597 (Mo.1964).

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.